JCG:RDE:cmg

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS G. WILLIAMS** | : | **No. 4:20-CV-1776** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Saporito, M.J.)** |
| | : | |
| **CHARM-TEX, et al.** | : | |
| **Defendants** | : | **Electronically Filed** |

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT
## <u>REGARDING ALL CLAIMS AND CROSS-CLAIMS</u>

Respectfully submitted,

JOHN C. GURGANUS
United States Attorney

Date: April 8, 2022

s/ Richard D. Euliss
Richard D. Euliss
Assistant United States Attorney
D.C. 999166
Cristina M. Guthrie
Paralegal Specialist
228 Walnut Street
Harrisburg, PA 17101
Phone: (717) 221-4462
Facsimile: (717) 221-2216
Richard.D.Euliss@usdoj.gov

# <u>Table of Contents</u>

Procedural History ............................................................................... 1

Background ........................................................................................... 2

    I.     Williams' Allegations ................................................................ 2
    II.    Facts Over Which There Is No Genuine Dispute ..................... 3
    III.   FOIA Allegations ..................................................................... 4

Questions Presented ............................................................................. 6

Arguments ............................................................................................ 6

    I.     Williams does not plausibly allege that the BOP negligently
           maintained the stairwell at USP Lewisburg ................................... 6

          a.    Williams has not plausibly alleged the existence of a defective
                condition .......................................................................... 8
          b.    The BOP had no actual or constructive notice of the alleged
                defective condition of the stairwell ..................................... 10
          c.    Williams failed to allege that the condition of the stairwell
                caused his injuries ............................................................ 12

    II.    The discretionary function exception precludes Williams' FTCA
           claim ............................................................................................ 14

    III.   The BOP conducted a search reasonably calculated to uncover all
           documents responsive to Williams' FOIA request ........................ 16

Conclusion ........................................................................................... 20

# Table of Authorities

## Cases

*ACLU of N.J. v. FBI*,
  733 F.3d 526 (3d Cir. 2013)(A) ............................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 .................................................................................... 9, 10

*Berkovitz v. United States*,
  486 U.S. 531–37 (1988) ......................................................................... 15

*Biear v. Att'y Gen. United States*,
  905 F.3d 151–56 (3d Cir. 2018)(A) ........................................................... 17

*Brayton v. Off. of the U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011) ................................................................. 18

*CNA v. United States*,
  535 F.3d 132 (3d Cir. 2008) ..................................................................... 7

*Cochrane v. Kopko*,
  975 A.2d 1203 (Pa. Commw. Ct. 2009) ............................................... 7, 8, 10

*Emge v. Hagosky*,
  712 A.2d 315 (Pa. Super. Ct 1998) ............................................................ 7

*Feaster v. Fed. Bureau of Prisons*,
  366 F. App'x 322 (3d Cir. 2010) ................................................. 2, 3, 4, 5, 6

*Howard v. United States*,
  488 F. App'x 576 (3d Cir. 2012) ....................................................... 7, 9, 10

*Jackson v. U.S. Gen. Servs. Admin.*,
   729 F. App'x 206 (3d Cir. 2018) .................................................. 17, 18, 18

*Kirschbaum v. WRGSB Assocs.*,
   243 F.3d 145 (3d Cir. 2001) ................................................... 11

*Lux v. Gerald E. Ort Trucking, Inc.*,
   887 A.2d 1281 (Pa. 2005) ..................................................... 13

*McHale v. Westcott*,
   893 F. Supp. 143 (N.D.N.Y. 1995) .............................................. 11, 12, 13

*Molzof v. United States*,
   502 U.S. 301 (1992) ............................................................ 7

*Neville v. Great Lakes Aviation Ltd.*,
   1998 WL 830632 at *2 (4th Cir. Dec. 2, 1998) .................................. 13-14

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) .................................................. 17-18, 18

*Paulino-Duarte v. United States, No. 02-cv-9499*,
   2003 WL 22533401 (S.D.N.Y. Nov. 7, 2003) ..................................... 16

*Peraza v. United States*,
   2013 WL 5441985 (M.D. Pa. Sept. 27, 2013) .................................... 8

*Rhodes v. Chapman*,
   452 U.S. 337 (1981) ........................................................... 16

*Rinaldi v. United States*,
   904 F.3d 257 (3d Cir. 2018) ................................................... 15, 16

*Soni v. United States*,
   739 F. Supp. 485 (E.D. Mo. 1990) ............................................. 16

*Steinberg v. DOJ*,
   23 F.3d 548 (D.C. Cir. 1994) ................................................. 19-20

*Straw v. Fair*,
  187 A.3d 966 (Pa. 2018) ........................................................................ 13

*Turner v. Miller*,
  679 F. Supp. 441 (M.D. Pa. 1987) ........................................................ 10

*United States v. Gaubert*,
  499 U.S. 315 (1991) .............................................................................. 14

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .............................................................. 18

## Statutes

28 U.S.C. § 1346 ......................................................................................... 2
28 U.S.C. § 2674 ......................................................................................... 7
28 U.S.C. § 2680 ....................................................................................... 14
28 U.S.C. § § 1346, 2674 ............................................................................ 2

Defendants/Cross-Defendants, the United States of America and the Federal Bureau of Prisons ("BOP"), file this brief in support of their motion to dismiss and/or for summary judgment regarding all claims and cross-claims.

## PROCEDURAL HISTORY

Plaintiff, Dennis G. Williams, is a federal inmate formerly designated to the United States Penitentiary Lewisburg ("USP Lewisburg") located in Lewisburg, PA. On September 28, 2020, Williams filed a Complaint against Co-Defendant Charm-Tex, Inc. asserting a strict liability claim.   *See* Dkt. No. 1.   On November 24, 2021, Williams filed a motion to add a party, which the Court construed as a motion for leave to amend complaint that failed to comply with the Local Rules.   *See* Dkt. Nos. 42-43.   On January 6, 2022, Williams filed a motion to amend, which the Court granted on January 7, 2022. *See* Dkt. Nos. 44-46.

On January 7, 2022, Williams filed an Amended Complaint against Charm Tex, the United States of America, the BOP, and Warden Spaulding.[1]  *See* Dkt. No. 46 at 10-11.   Against the United States, Williams asserts a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1).   Against the BOP[2]

---

[1]  This Court declined to allow any claim against Warden Spaulding because he "is not an appropriate defendant for either FTCA claims or FOIA claims," *See* Dkt. No. 45 at ¶ 3 n.1.   Thus, Warden Spaulding is no longer a party to this action.

[2]  To the extent it interprets the Amended Complaint as asserting the FTCA claim

1

Williams brings a claim under the Freedom of Information Act.   In its Answer, Co-Defendant Charm-Tex included a cross-claim for indemnification and/or contribution based entirely on Williams' allegations against the United States.   *See* Dkt. No. 50.   After a brief enlargement of time, Defendants filed a motion on March 25, 2022, seeking dismissal of, or summary judgment regarding, Williams' claims and Charm-Tex's cross-claim.[3]  *See* Dkt. No. 55.

## BACKGROUND

### I.   Williams' Allegations

In June 2020, Williams was a federal inmate housed in the D-block of the United States Penitentiary, Lewisburg ("USP Lewisburg"), in Lewisburg, Pennsylvania.   On June 28, 2020, Williams was descending the steps of the D-block stairwell from the second floor to the first floor, when he fell down the stairs to the second-floor landing.   Dkt. No. 46 at 3.

---

against the BOP, the Court should dismiss the claim, as the only properly named defendant in an action filed pursuant to the FTCA is the United States. 28 U.S.C. § 1346, 2674; *Feaster v. Fed. Bureau of Prisons*, 366 F. App'x 322, 323 (3d Cir. 2010).

[3]  Charm-Tex's cross-claim for indemnity and/or contribution is based only on allegations from the Amended Complaint adopted by reference.   *See* Dkt. No. 5 at 4.   Thus, if the United States is entitled to dismissal or summary judgment as to Williams, it is equally entitled to that relief as to Charm-Tex.

Williams describes falling after his right shoe "came apart and the toe section of the shoe got caught in the stair which caused Williams' momentum to [continue] forward down the stairs, while his right foot" was stuck. *Id.* According to Williams, his prison shoes were defective and its manufacturer, Co-Defendant Charm-Tex, "knew or should have known" about the defective condition. *Id.* at 9. Williams separately alleges that the BOP failed to properly maintain the portion of the stairwell where Williams fell. *Id.* at 10. Specifically, Williams contends that the stairwell on which he fell was unsafe because: (1) there was only a handrail on the right side; (2) the stairs had an improper riser height and tread depth; and, (3) "the nosing of the treads had a non-uniform slip resistance characteristic." *Id.*

## II.    Facts Over Which There Is No Genuine Dispute

BOP facilities must conform to standards and codes established by the American Correctional Association ("ACA") and the National Fire Protection Association ("NFPA"). SMF ¶¶ 4-8. The portion of the D-block stairwell where Williams fell met these standards. SMF ¶¶ 9-12. The NFPA Life Safety Code mandates a maximum stair riser height of 8 inches and a minimum tread depth of 9 inches. SMF ¶¶ 9-10. The D-block stairs had riser heights of 7.5 inches and tread depths of 11 inches, thus conforming to governing standards. *Id.* Further, the NFPA Life Safety Code permits a single handrail for existing stairs at BOP facilities,

3

such as the ones at issue here.   SMF ¶ 11.   Finally, the Life Safety Code requires stair treads to be reasonably slip-resistant with nonslip finishes on their nosings. SMF ¶ 12.   The stairs in D-block were indeed slip-resistant with nonslip finished nosings.   *Id.*

### III.   FOIA Allegations

On July 30, 2020, Williams submitted a FOIA request to the BOP "for all medical records, incident reports, internal records, investigations, and all video recordings regarding [his stairwell] incident for the period of June 28, 2020, to July 28, 2020."   *See* Dkt. No. 46 at 6.   On August 11, 2020, the BOP notified Williams that his request was received.   *Id.* at 7.

On October 11, 2020, the BOP's Central Office forwarded Ms. Eichensehr a FOIA request dated July 30, 2020, from Plaintiff Williams. SMF ¶¶ 13-17.   Ms. Eichensehr sent a request for records to Ms. Mosier, with legal services, who then liaised with staff and departments within USP Lewisburg that were likely to maintain records responsive to Williams' request. SMF ¶¶ 18-24.   In particular, Ms. Mosier sought and received Williams' medical records from health services.   *Id.*   She queried Williams' unit team for any responsive records in Williams' central file. *Id.*   Ms. Mosier also queried USP Lewisburg's special investigative services ("SIS") office.   *Id.*   The SIS office maintains records of investigations relating to,

4

inter alia, institutional security, including criminal activity, fights, or other activity that can result in internal discipline. *Id.* Finally, Ms. Mosier queried the safety department, which maintains investigatory files relating to institutional environmental and occupational safety. *Id.* Ms. Mosier and Ms. Eichensehr did not receive responsive records from any of these departments, aside from Williams' medical records. SMF ¶ 25.

On February 1, 2022, Ms. Mosier confirmed that there were no responsive records held by USP Lewisburg's safety department. SMF ¶ 26.[4] On February 2, 2022, Ms. Eichensehr spoke to a technician from USP Lewisburg's SIS office. SIS offices maintain institutional video recordings at their respective facilities. The technician confirmed that no video was preserved at USP Lewisburg from June 28, 2020. Unless video recordings at USP Lewisburg are specifically flagged for preservation, the video is typically deleted within 14 days. SMF ¶ 27. On February 2, 2022, Ms. Eichensehr mailed the responsive records to Williams. SMF ¶ 28. These records consisted of Williams' complete medical records from June 28, 2020, to July 28, 2020. *Id.*

---

[4] Paragraph 7 of the Eichenseher Declaration explains that an email address mishap contributed to the delay in the processing of the FOIA request.

In sum, with Ms. Mosier's assistance, Ms. Eichensehr conducted a search reasonably calculated to uncover all relevant documents requested by Williams. SMF ¶ 29.   There simply are no incident reports, internal records, or investigations mentioning Williams from June 28, 2020, to July 28, 2020. SMF ¶ 30.   All departments likely to have such records verified that they did not possess them. The requested video from June 28, 2020 – if it ever existed – had already been deleted by the time Williams requested it.   *Id.*

## QUESTIONS PRESENTED

1.   Whether Williams failed to allege a negligence claim stemming from the BOP's maintenance of the stairwell at USP Lewisburg?

2.   Whether the Discretionary Function Exception precludes Williams FTCA claim?

3.   Whether Defendant BOP conducted a search reasonably calculated to uncover all documents responsive to Williams' FOIA request?

Suggested Answer to All: Yes

## ARGUMENT

## I.   Williams does not plausibly allege that the BOP negligently maintained the stairwell at USP Lewisburg

The United States is liable under the FTCA "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

6

Thus, the elements of an FTCA claim "must come from state tort law." *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008); *Molzof v. United States*, 502 U.S. 301, 305 (1992).

Here, Williams alleges the United States is liable for its negligent maintenance of a stairwell. "The standard of care a possessor of land owes to one who enters upon the land depends on whether the latter is a trespasser, licensee, or invitee." *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. Ct 1998).   In Pennsylvania, "inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials." *Cochrane v. Kopko*, 975 A.2d 1203, 1206 (Pa. Commw. Ct. 2009). Landowners thus "owe a duty to invitees to protect them from foreseeable harm." *Id.; see also Howard v. United States*, 488 F. App'x 576, 578 (3d Cir. 2012) ("The [BOP] must exercise ordinary diligence in keeping prisoners safe and free from harm." (citing 18 U.S.C. § 4042)).   Based on that standard, to plausibly allege that the United States breached its duty, Williams must show that the BOP:

> (1) knew of the [stairwell's dangerous] condition or would have discovered it by the exercise of reasonable care, and should have realized that it posed an unreasonable risk of harm; (2) should have expected that [Williams] would not discover the danger or would have failed to protect himself against it; and (3) failed to exercise reasonable care to protect [Williams] from the danger.

*See Howard*, 488 F. App'x at 578 (citing *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983)).

However, landowners do *not* have a duty to protect invitees from known and obvious dangers.   Thus, a possessor of land does not breach the standard of care owed to invitees "for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them . . .[.]" *Cochrane*, 975 A.2d at 1206 (quoting Restatement (Second) of Torts § 343A).   The Pennsylvania Supreme Court explained that "[i]t is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers." *Id.* at 1207 (quoting *Carrender v. Fitterer*, 503 Pa. 178, 188 (1983)).

Finally, "[t]he mere existence of a harmful condition or the happening of an accident does not by itself raise a presumption of negligence." *Peraza v. United States*, 2013 WL 5441985, at *3 (M.D. Pa. Sept. 27, 2013).   Instead, a plaintiff also must "show that the defendant's negligence was the proximate cause of his injury." *Id.* This effectively means that Williams must "demonstrate that [USP Lewisburg] staff had a hand in creating the harmful condition, or [it] had actual or constructive notice of the condition." *Id.*

A. *Williams has not plausibly alleged the existence of a defective condition*

Williams alleges only in a conclusory fashion that the staircase had the following defective conditions: 1) a single handrail; 2) improper stair riser height

and tread depth; and 3) a non-uniform slip-resistant characteristic on the stair nosing. *See* Dkt. No. 46 at 4.   But it is insufficient for Williams to allege – as he does – solely in a conclusory fashion that any defects existed.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (stating that conclusory allegations, bereft of specific facts, cannot survive a motion to dismiss).

Specifically, Williams does not allege *how* the stairwell's features "posed an unreasonable risk of harm."   *See Howard*, 488 F. App'x at 578.   For example, why was a second handrail essential for the safety of that portion of the stairwell?   Was Williams even on the left side of the staircase when he fell?   Was the stairwell too wide for Williams to reach the right-side handrail?   If so, why did Williams choose to traverse the side of the stairwell with no handrail?   What was wrong with the riser height and tread depth?   How tall was the riser height?   Was this too tall or short?   Were the heights uniform?   What was the tread depth?   Was it too deep or not deep enough?   Why was slip-resistant stair nosing dangerous?   How did the stairs where Williams was injured differ from other stairs at USP Lewisburg?   The Amended Complaint offers no details on these salient questions.

Moreover, particularly regarding the single handrail, the BOP simply had no duty to protect Williams from that clear and obvious condition.   As noted above, "[i]t is precisely because the invitee assumes the risk of injury from obvious and

avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers." *Cochrane*, 975 A.2d at 1207.    At bottom, therefore, Williams' choice not to make use of the existing handrail (thus avoiding the risk of falling without access to a handrail) – despite the clear and obvious absence of a second handrail – amounts to an assumption of risk that precludes Williams from seeking liability on the United States for this supposed defective condition.

Finally, even assuming some inherently risky characteristics of the stairwell, "[i]t is unreasonable to expect that the authorities can make a penitentiary a risk-free institution." *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987).    But Williams has not plausibly alleged that the stairwell's condition presented *any* risk whatsoever, let alone the "unreasonable risk of harm" necessary for his FTCA claim. *See Howard*, 488 F. App'x at 578.    His "labels and conclusions" fall short, *see Twombly*, 550 U.S. at 555, especially in light of the stairwell's conformity to the NFPA Life Safety Code.    SMF ¶¶ 6-12.

> B.    *The BOP had no actual or constructive notice of the alleged defective condition of the stairwell*

Williams has not plausibly alleged that "USP [Lewisburg] staff either had a hand in creating the harmful condition or had actual or constructive notice of the condition." *See Howard*, 488 F. App'x at 578.    As to this element, Williams again

alleges no facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570).

Landowners are "obligated to discover and repair" defects "if, by the exercise of reasonable care, [they are] capable of discovering the defect." *Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 152 (3d Cir. 2001). Williams fails to allege how or why the BOP had actual or constructive knowledge of the alleged defects, especially the supposed riser height, tread depth, and tread nosing issues that would not be readily apparent, and which even Williams evidently failed to appreciate. Nor does Williams allege what reasonable care would have revealed the alleged defects. The absence of these allegations is particularly critical where Williams has not even described how the riser height, tread depth, and nosing were defective in the first place.

The court in *McHale v. Westcott*, 893 F. Supp. 143, 149 (N.D.N.Y. 1995), found that the plaintiffs' failure to produce evidence of the United States' actual or constructive notice of defective stair riser heights justified a judgment against the plaintiffs. The *McHale* Court noted "the failure of plaintiff herself to notice a defect" supported "the conclusion that the defect was not visible and apparent." *Id.* So, too, with Williams. Finally, as in the facts of *McHale*, here Williams was

11

traversing a staircase that "hundreds of people used . . . over many years without perceiving a defect." *See* *id.*

Finally, based on the evidence presented by the United States, there can be no genuine dispute that the United States had no actual or constructive knowledge of any defect in the staircase.   In fact, the opposite is true – the United States had every reason to believe the staircase met all applicable standards and was safe for its intended use.   Specifically, there were two inspections of the institution at or around the time of Williams' fall, neither of which revealed any issues with the stairs.   (SMF ¶¶ 6-7).   Moreover, the single handrail, riser height, tread depth, and slip resistance attributes of the stairwell all conformed with governing standards published by the American Correctional Association and National File Protection Association.   *Id*. ¶¶ 9-12.   Given these circumstances, Williams has not – and cannot – show that the United States had actual or constructive knowledge about any defect.

C.   *Williams failed to allege that the condition of the stairwell caused his injuries.*

Even assuming *arguendo* that Williams had alleged a defective condition, "the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation."   *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. 2005).   To establish this

12

causal link, "a plaintiff must produce sufficient facts to show that the defendant's negligence was both the cause-in-fact and the legal, or proximate, cause of [his] injuries.   In Pennsylvania, a negligent act is a cause-in-fact of the plaintiff's injuries 'if the harmful result would not have come about but for the negligent conduct.'" *Straw v. Fair*, 187 A.3d 966, 993 (Pa. 2018) (quoting *First v. Zem Zem Temple*, 686 A.2d 18, 21 n.2 (Pa. Super. Ct. 1996)).

Here again, Williams' Amended Complaint fails to offer the requisite allegations.   While he "need not prove the precise step on which [he] fell or the precise condition of that step in order to show proximate cause," *see McHale*, 893 F. Supp. at 150, Williams does not offer a scintilla's basis for how *any* of the steps or alleged defects of the stairwell contributed to his fall, which could just as easily been due to personal error.   *Cf. Neville v. Great Lakes Aviation Ltd.*, 1998 WL 830632 at *2 (4th Cir. Dec. 2, 1998) ("Tripping on the stairs of an airplane is simply not an event that results predominantly from an airline's negligence.   Quite often, people trip as a result of their own inattentiveness.").

In fact, if the Amended Complaint specifically alleges any external cause of Williams' fall, it is that his shoe came apart, causing him to trip.   Williams' allegations in this regard are detailed, in that he alleges specifically that the "right foot shoe's toe section" had "c[ome] apart" and "got caught in the stair."   All the

13

Amended Complaint plausibly alleges, therefore, is that Williams's *shoe* caused him to fall, not that there was something defective about the stair in and of itself.   The Court, therefore, should dismiss the FTCA claim or enter summary judgment in the United States' favor.

## II.    The discretionary function exception precludes Williams' FTCA claim.

FTCA actions are limited by the so-called "discretionary function exception" ("DFE").   Under the DFE, the FTCA does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."   28 U.S.C. § 2680(a).   The Supreme Court adopted a two-part test to determine the applicability of the DFE.   *See United States v. Gaubert*, 499 U.S. 315, 322 (1991). As applied by the Third Circuit:

> First, we ask whether the challenged conduct involved an "element of judgment or choice," which depends on whether there is a "federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow."   Second, if the act does involve judgment, we ask whether the judgment involved is "the kind that the discretionary function exception was designed to shield."

*Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018) (alteration in original) (citation omitted) (quoting *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000)).

Regarding the second prong,

14

assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the [DFE] was designed to shield.   The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.

*Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (internal citation omitted)

(quoting *United States v. Varig Airlines*, 467 U.S 797, 814 (1984)).

Governing NFPA standards state that a stair riser height should not exceed 8 inches and that stair tread depth must be at least 9 inches wide.   As argued above, the staircase at issue met these standards, meaning that he cannot establish a duty breach.   SMF ¶¶ 9-12.   But nor can Williams argue for liability to the extent the staircase's characteristics varied from NFPA baseline standards (*i.e.*, to the extent the tread depth *exceeded* the 9-inch *minimum* or the extent to which the riser height was *less* than the 8-inch *maximum*) because such theories would be barred by the DFE in that the BOP had policy-based discretion in the safety features of the stairwells at USP Lewisburg.

"[H]ousing and cellmate assignments are 'of the kind that the discretionary function exception was designed to shield.'"   *Rinaldi*, 904 F.3d at 274 (quoting *Mitchell*, 225 F.3d at 363).   So too must be environmental characteristics, as "a

15

prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981); *cf. Paulino-Duarte v. United States*, No. 02-cv-9499, 2003 WL 22533401, at *2 (S.D.N.Y. Nov. 7, 2003) ("The decision as to whether to put guardrails on bunk beds or deciding which inmates get which bunks is clearly discretionary.   Congress has granted the BOP with broad discretion with regards to the safekeeping of inmates."); *Soni v. United States*, 739 F. Supp. 485, 488 (E.D. Mo. 1990) ("Here, plaintiff alleges faulty design of the steps and handrail and negligent failure to warn of that condition. These matters, however, involve policy decisions covered by the discretionary function exception.").   Thus, Williams is barred from seeking liability against the United States to the extent it exercised discretion afforded to it by the standards governing the staircase's characteristics.

## III.   The BOP conducted a search reasonably calculated to uncover all documents responsive to Williams' FOIA request.

"The FOIA requires any 'agency,' upon 'any request,' to make records 'promptly available to any person.'" *ACLU of N.J. v. FBI*, 733 F.3d 526, 531 (3d Cir. 2013) (quoting 5 U.S.C. § 552(a)(3)(A)).   As such, "an agency has a duty to conduct a reasonable search for responsive records." *Jackson v. U.S. Gen. Servs. Admin.*, 729 F. App'x 206, 207 (3d Cir. 2018).   "Requests under FOIA are proper if they 'reasonably' describe the records sought and are made 'in accordance with

published rules stating the time, place, fees (if any), and procedures to be followed.'"

*Biear v. Att'y Gen. United States*, 905 F.3d 151, 155–56 (3d Cir. 2018) (quoting § 552(a)(3)(A)). "[T]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested." *Biear*, 905 F.3d at 156 (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002)).

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).[5] "An agency fulfills its obligations under FOIA if . . . its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C.Cir. 1990)). "The relevant inquiry is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Jackson*, 729 F. App'x at 207 (quoting *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

---

[5] "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"[T]he agency should provide 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Id.* (quoting *Valencia-Lucena, 180 F.3d at 326*); *see also Oglesby, 920 F.2d at 68* ("There is no requirement that an agency search every record system[, but] the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." (citations omitted)).

Pursuant to the FOIA, Williams requested "all medical records, incident reports, internal records, investigations, and all video recordings regarding [his stairwell] incident for the period of June 28, 2020, to July 28, 2020." *See* Dkt. No. 46 at 6.   Lee-Anne Eichensehr, a government information specialist with the BOP's Northeast Regional Office, received Williams' request, culled the responsive records, and transmitted them to Williams, satisfying the BOP's FOIA obligations. SMF ¶¶ 13-30.

Ms. Eichensehr sought responsive records from all staff and departments at USP Lewisburg that were likely to maintain them: health services, Williams' unit team, the SIS office, and the safety department.   SMF ¶ 24.   Ultimately, the BOP only found medical records responsive to Williams' request.   SMF ¶ 28. Although Williams may have assumed otherwise, no incident reports, internal

18

records, or investigations were instigated based on his fall.   SMF ¶ 30.   Video of the stairwell was deleted prior to Williams' FOIA request because USP Lewisburg retains video for only 14 days, unless specially preserved.   SMF ¶¶ 27, 30.

In sum, Ms. Eichensehr's search was "reasonably calculated to uncover all relevant documents," (SMF ¶¶ 29-30), even though many of Williams' requested records were not found.   *See Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." (quoting *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991)).   The Court, thus, should enter judgment in the United States' favor on the FOIA claim.

## CONCLUSION

Wherefore, in light of the foregoing, Defendants respectfully request that the Court dismiss Williams' Amended Complaint and all cross-claims and/or grant summary judgment in Defendants' favor.

<div style="margin-left: 40%;">

Respectfully submitted,

JOHN C. GURGANUS
United States Attorney

</div>

Date: April 8, 2022

<div style="margin-left: 40%;">

s/ Richard D. Euliss
Richard D. Euliss
Assistant United States Attorney
D.C. 999166
Cristina M. Guthrie
Paralegal Specialist
228 Walnut Street
Harrisburg, PA 17101
Phone: (717) 221-4482
Facsimile: (717) 221-2216
Richard.D.Euliss@usdoj.gov

</div>

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS G. WILLIAMS** | : | **No. 4:20-CV-1776** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Saporito, M.J.)** |
| | : | |
| **CHARM-TEX, et al.** | : | |
| **Defendants** | : | **Electronically Filed** |

### CERTIFICATE OF SERVICE BY ECF NOTIFICATION AND MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.   That on April 8, 2022, she served a copy of the attached

### BRIEF IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT
### REGARDING ALL CLAIMS AND CROSS-CLAIMS

by ECF Notification and/or placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

**VIA ECF Notification:**
John R. McHaffie
john.mchaffie@thehartford.com; eileen.fraser@thehartford.com
Attorneys for Defendant Charm-Tex

**VIA First Class Mail:**
Dennis G. Williams
Reg. No. 28805-018
FCI Williamsburg
P.O. Box 340                     /s/ Cristina M. Guthrie
Salters, SC 29590                Cristina M. Guthrie
                                 Paralegal Specialist