## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS G. WILLIAMS,
#28805-018,

      Plaintiff,

      v.

CHARM-TEX, et al.,

      Defendants.

CIVIL ACTION NO. 4:20-cv-01776

(SAPORITO, C.M.J.)

## MEMORANDUM

This is a diversity action brought by a federal prisoner, Dennis G. Williams, against Charm-Tex, Inc., a company that sells a variety of specialized supplies to correctional institutions, including shoes for inmates designed to accommodate security concerns.[1]

Williams is a convicted federal inmate serving a 21-year prison sentence. He is currently confined at FCI Coleman Medium, a medium-security federal correctional institution located in Sumter County, Florida. At the time of filing, he was confined at USP Lewisburg, a high-

---

[1] In his amended complaint, the plaintiff asserted negligence claims against the United States under the Federal Tort Claims Act as well. But the United States was granted summary judgment in its favor on September 26, 2023. *See* Doc. 80.

security federal prison located in Union County, Pennsylvania.[2]

Williams was transferred from another prison to USP Lewisburg in April 2020. Upon arrival, he was issued a pair of clear-soled black sneakers. On June 28, 2020, Williams fell down a set of stairs and suffered injuries. In his amended complaint, he alleges that his fall was caused by a defect in his shoe—the sole of his right shoe became detached from the upper part of the shoe, causing him to trip and fall. Notably, as a prisoner, Williams was not permitted to retain the damaged shoe.

In September 2020, Williams commenced this action, filing a *pro se* complaint asserting a state-law product liability claim against Charm-Tex. Williams alleged that the pair of shoes he was wearing at the time of his fall had been purchased from Charm-Tex by the Bureau of Prisons, which then issued it for Williams to wear.

In November 2023, we denied Charm-Tex's first motion for summary judgment, which relied solely on an argument that the plaintiff's failure to produce an expert report on the issue of defectiveness was necessarily fatal to his claim. In doing so, we noted that, under

---

[2] We note that USP Lewisburg was subsequently redesignated as a medium-security facility and renamed "FCI Lewisburg."

Pennsylvania law, a malfunction theory of product liability did not require the plaintiff to proffer such expert evidence to establish a prima facie case sufficient to survive summary judgment. Charm-Tex subsequently moved for reconsideration, and we denied that motion on December 5, 2023. A couple of days later, on December 7, 2023, we referred the case for mediation and continued the impending bench trial indefinitely.[3]

The parties participated in mediation on January 9, 2024. On January 10, 2024, the court-appointed mediator reported to the court that the mediation had been unsuccessful.

On January 18, 2024, the court received and docketed a letter-motion by the incarcerated *pro se* plaintiff, signed and dated on January 11, 2024, in which Williams advised that, within the brief period of days between the mediation and his letter, he had newly come into possession of two color photographs of the allegedly defective shoes that he had been wearing on the day when he fell and was injured. Despite the late disclosure of this new material,[4] Williams requested leave of court to

---

[3] A bench trial had been scheduled to occur on January 9, 2024.
[4] The original discovery deadline had expired 2½ years earlier, in July 2021.

introduce these photos into evidence at his forthcoming civil trial. On January 29, 2024, the defendant filed a brief in opposition to the plaintiff's *pro se* letter-motion, arguing that the photos should not be admitted because they had not been produced in discovery, or that, in the alternative, discovery should be reopened to permit the parties to explore the factual issues raised by the late disclosure of these photographs.

On February 8, 2024, on the defendant's request, but without ruling on the plaintiff's letter-motion requesting relief *in limine*, which remains pending, we entered an order reopening discovery until May 31, 2024. At the same time, we entered an order rescheduling the bench trial to commence on June 11, 2024. A few weeks later, we granted a subsequent motion by the defendant for a 60-day extension of the expert disclosure deadline to accommodate delays it had experienced in obtaining the production of discovery materials from the incarcerated plaintiff and from third-party subpoena recipients.

On April 10, 2024, the defendant filed the instant motion for summary judgment, together with a statement of undisputed material facts and a brief in support of the motion. The original statement of undisputed material facts, however, failed to address certain material

facts and supporting evidence cited and discussed in the defendant's brief. Thus, on April 11, 2024, we ordered the defendant to file an amended statement of undisputed material facts that included this omitted information.

On April 15, 2024, the defendant filed its amended statement of undisputed material facts. On May 10, 2024, the plaintiff filed his response to the defendant's statement of material facts, together with supporting exhibits, and his brief in opposition to the motion for summary judgment.

The defendant's motion for summary judgment is now fully briefed and ripe for decision.

## I.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477

U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II.   UNDISPUTED MATERIAL FACTS[5]

Williams is a convicted federal prisoner, serving an aggregate 21-

---

[5] In accordance with the requirements of Local Rule 56.1, the defendant has filed a statement of material facts in support of its motion

*(continued on next page)*

year sentence of incarceration. On April 15, 2020, he arrived at USP

Lewisburg, following a transfer from another federal prison. Upon his

arrival, or shortly thereafter, Williams was issued a pair of shoes.

On June 28, 2020, Williams fell down a set of stairs due to an

alleged defect in his prison-issued right shoe. In September 2020,

Williams filed his initial complaint in this action, asserting a state-law

products liability claim against Charm-Tex based on its alleged sale of

the defective shoe to the Federal Bureau of Prisons, which was then

issued to Williams at USP Lewisburg. Williams no longer has possession

of the shoes—he was not permitted to retain them when he later

transferred out of USP Lewisburg on January 17, 2021.

On January 11, 2024, in anticipation of a bench trial in this case,

---

for summary judgment, together with supporting documentary exhibits.
Doc. 137. In accordance with the federal and local rules, the statement of
material facts was set forth in numbered paragraphs and included
references to the parts of the record that supported the statements. *See*
Fed. R. Civ. P. 56(c)(1); M.D. Pa. L.R. 56.1.

The plaintiff has filed a response to the defendant's statement of
material facts, responding to the numbered paragraphs set forth in the
defendant's statement by admitting or denying each one, but few of his
responses cite to competent evidence. Doc. 138. Where the plaintiff has
failed to cite competent evidence to demonstrate a genuine dispute of
material fact, the defendant's fact statements have been deemed
admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

Williams filed a letter requesting permission to submit into evidence two color photographs of the allegedly defective shoes worn on the date of his fall (the "incident shoes"). The photos had not been previously produced in discovery, as the plaintiff reportedly had only recently come into possession of the photographs. The photographs depicted a black sneaker-style shoe with a mixed leather and mesh fabric upper, a clear rubber or plastic sole, and velcro fasteners. As depicted in these photographs, the sole of each shoe can be seen to have separated from the upper portion, toward the front of the shoe. Where the two pieces have not separated, they appear to be attached with black stitching. The plaintiff has expressly admitted that the photos depict the shoes that he was wearing at the time of his fall on June 28, 2020. As a result of the disclosure of this new photographic evidence, discovery was reopened.

On March 21, 2024, a corporate representative of the defendant, Ben Danzger, executed a testimonial affidavit. In his affidavit, Danzger stated that, on April 20, 2020—five days after Williams's arrival there—Charm-Tex sold and supplied USP Lewisburg with "sneakers, clear sole leather velcro, black" in various sizes, including size 12 shoes identified by item code "F/CLEARBK12." Prior to April 20, 2024, Charm-Tex had

not supplied USP Lewisburg with any sneaker-style shoes with velcro fasteners; it had previously sold only canvas slip-on shoes in February 2011, October 2015, and March 2016, and 17-inch waterproof rubber boot style overshoes in February 2020.[6]

Charm-Tex is not an exclusive supplier of shoes to USP Lewisburg. The shoes depicted in the two photographs supplied by the plaintiff were

---

[6] The plaintiff has disputed this factual statement with an objection to the moving defendant's supporting evidence—Danzger's affidavit. To be properly considered on summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The plaintiff notes that the defendant has not submitted copies of invoices to support this factual statement by Danzger, suggesting that Danziger's affidavit is not competent evidence for consideration on summary judgment because it is not based on personal knowledge. But it is well established that "[a]ffiants can have personal knowledge for purposes of Rule 56(c)(4) based on their review of business records and files." *Colonial Pac. Leasing Corp. v. N. & N. Partners, LLC*, 981 F. Supp. 2d 1345, 1355 (N.D. Ga. 2013); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1511 (3d Cir. 1996); *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34, 47 (D.D.C. 2021); *MetroPCS v. Thomas*, 327 F.R.D. 600, 618 (N.D. Tex. 2018); *Del Rosario v. Labor Ready Se., Inc.*, 124 F. Supp. 3d 1300, 1316 (S.D. Fla. 2015); *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014); *Duke v. Nationstar Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012); *Warwick Corp. v. Md. Dep't of Transp.*, 573 F. Supp. 1011, 1015 (D. Md. 1983). Accordingly, the plaintiff's objection is OVERRULED. In the absence of any citation to evidence in the record to counter the defendant's statement, the moving defendant's factual statement is deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

*not* manufactured, sold, or supplied by Charm-Tex to USP Lewisburg.[7] In

---

[7] The plaintiff has conceded that Charm-Tex does not manufacture shoes, but instead serves as a distributor of products manufactured by others in China. He has otherwise disputed this factual statement by the moving defendant, citing only to a poor-quality photocopy of a catalog page. The catalog page, produced by Charm-Tex as an exhibit to its initial disclosures, depicts a "clear sole leather velcro sneakers" product, available in white and black. The catalog page includes a picture of four individual shoes from different angles, including, from left to right: a white shoe viewed from the left side, a black shoe viewed from the left side, the clear sole of a shoe viewed from the bottom, and a black shoe viewed from the right side. The plaintiff contends that the image on the far right side depicts a "different type shoe" with *black* stitching fastening the clear sole to a black upper, rather than the white stitching Charm-Tex claims to use on its clear sole leather velcro sneakers. But due to the poor quality of the photocopy submitted by the plaintiff, the court's copy of these images is almost entirely black and completely illegible. *See Mercer v. Peterson*, No. 09-cv-00654, 2011 WL 2581515, at *5 n.2 (D. Colo. Apr. 6, 2011) (declining to consider copies of photographs that were "entirely black and completely illegible" on summary judgment); *see also City of Lincoln*, 668 F. Supp. 3d 1079, 1086–87 (E.D. Cal. 2023) ("Courts disregard irrelevant, indecipherable or speculative evidence, and Rule 56 does not permit litigants to oppose summary judgment on the basis of vague assertions or speculation.") (citations omitted). The catalog text associated with these images, however, is not illegible, and we note that the description of the product depicted in the illegible images clearly and expressly states that the shoe "is designed with a vented leather upper," which is inconsistent with the mesh fabric upper of the shoe actually worn by the plaintiff at the time of his fall. *See* Pl.'s Ex. A, at 6, Doc. 138-1, at 7. The evidence cited by the plaintiff simply does not support his contention that there is a genuine dispute with respect to whether Charm-Tex sold or supplied the defective shoes with a mesh fabric upper depicted in the photographs submitted by Williams. In the absence of any citation to evidence in the record to counter the defendant's statement, the moving defendant's factual statement is deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

addition to other design details that differed, the clear sole leather velcro sneaker sold by Charm-Tex had a full leather upper, while the incident shoes had a leather and mesh fabric upper.[8]

Charm-Tex has also produced an expert report by a retained expert in biomechanical engineering, Alexandra Maddox. Based on her review of exemplar shoes produced by Charm-Tex, the two color photographs of the incident shoes disclosed by Williams in January 2024, an internet review of footwear marketed for use by inmates, and other discovery materials, Maddox concluded that the incident shoes, depicted in the photographs disclosed by Williams in January 2024, did not match the shoes sold and distributed by Charm-Tex. She noted that the incident shoes had a different tread design, different stich coloring around the sole of the sneaker, and a different material used on the upper portion of the

---

[8] The plaintiff has disputed the moving defendant's factual statements regarding the composition of the shoe sold and supplied to USP Lewisburg by Charm-Tex, but other than additional references to the completely illegible copy of a photograph from a Charm-Tex catalog page, he has failed to cite any evidence to counter the defendant's factual statements. In the absence of any citation to evidence in the record to counter the defendant's statements, the moving defendant's factual statements are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

shoe than those sold and distributed by Charm-Tex.[9]

Maddox further noted that a competitor of Charm-Tex—the Bob Barker Company—sold and distributed a "clear sole tennis shoe, leather/mesh" product that matched the design details of the incident shoes as depicted in the photographs disclosed by Williams in January

---

[9] The plaintiff disputes these statements of fact by the moving defendant, once again without citing any evidence in the record to counter the defendant's statements. His only basis for dispute is an apparent objection to the admissibility of the defendant's expert opinion evidence, challenging the retained expert's methodology by suggesting that she relied solely on photographs rather than tangible, physical exemplars of the Charm-Tex and Bob Barker shoes. He fails to articulate any reason, however, why a photographic comparison would be insufficient to support her expert opinion. See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) ("Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.") (citation omitted). Accordingly, the plaintiff's objection is OVERRULED. In the absence of any citation to evidence in the record to counter the defendant's statements, the moving defendant's factual statements are deemed admitted. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1. Moreover, we note, without ruling, that Maddox's ultimate opinions may not even be necessary given the primary evidence in the record. The differences between the incident shoes and those marketed by Charm-Tex, and the similarities between the incident shoes and those marketed by Bob Barker, are so distinct and so obvious that a factfinder could reach the same ultimate conclusions through its own photographic comparison without the assistance of an expert opinion. See Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 415–16 (3d Cir. 1999) (expert evidence may be unnecessary where "testimony and pictures may enable the jury to clearly see the construction of the [allegedly defective product]").

2024. Most notably, the Bob Barker shoe utilized a mixed leather and mesh fabric upper. It also featured black stitching around the sole, a tread pattern that matched the photographs of the incident shoes, and other design details that matched the photographs of the incident shoes. Based on this, Maddox concluded that the incident shoes, depicted in the photographs disclosed by Williams in January 2024, matched the shoes sold and distributed by Bob Barker.[10]

## III.   DISCUSSION

The photographs disclosed by Williams in January 2024 have narrowed the focus of this litigation to a single question: Is there a genuine dispute of material fact concerning whether the allegedly defective "incident shoes" worn by the plaintiff, Williams, when he fell and injured himself on June 28, 2020, were sold or supplied to USP Lewisburg by the defendant, Charm-Tex? We find that there is no genuine dispute of material fact, and that Charm-Tex is entitled to judgment as a matter of law.

Williams has expressly admitted that the shoes depicted in the two color photographs he first disclosed on January 11, 2024, were the shoes

---

[10] *See supra* note 9.

he was wearing at the time of his fall on June 28, 2020. In support of its motion for summary judgment, Charm-Tex has proffered substantial evidence that the incident shoes depicted in those photographs were not sold or supplied to USP Lewisburg by Charm-Tex. In particular, they have provided a testimonial affidavit by a corporate representative highlighting design details of the incident shoes depicted in Williams's photographs that distinguish them from the clear sole black leather velcro sneaker shoes sold by Charm-Tex. The most distinctive difference is that the Charm-Tex shoes include a full leather upper portion, whereas the incident shoes have a mixed leather and mesh fabric upper instead. The incident shoes also have different colored stitching around the sole and a different tread pattern, as well as other cosmetic detailing differences. The moving defendant has also proffered the expert report of a biomechanical engineer, whose investigation and analysis led her to conclude that the incident shoes depicted in the two photographs disclosed by Williams in January 2024 were not sold or supplied by the defendant, Charm-Tex, but by its competitor, the Bob Barker Company.

The plaintiff has adduced no competent evidence to counter the evidence proffered by the moving defendant. "In the context of a products

liability action, before liability will attach, 'plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier.'" *Stephens v. Paris Cleaners, Inc.*, 885 A.2d 59, 63 (Pa. Super. Ct. 2005) (quoting *Payton v. Pa. Sling Co.*, 710 A.2d 1221, 1225–26 (Pa. Super. Ct. 1998)); *see also Burman v. Golay & Co.*, 616 A.2d 657, 659 (Pa. Super. Ct. 1992)). Thus, in the absence of any evidence identifying Charm-Tex as the seller or supplier of the allegedly defective incident shoes that caused Williams to fall and be injured, Charm-Tex cannot be held liable for selling or supplying a defective product that caused the plaintiff's injury. *See Stephens*, 885 A.2d at 64–65; *DeWeese v. Anchor Hocking Consumer & Indus. Prods. Grp.*, 628 A.2d 421, 424 (Pa. Super. Ct. 1993).

Accordingly, based on the undisputed material facts of record, viewed in the light most favorable to the non-moving plaintiff, we find that the moving defendant is entitled to judgment as a matter of law, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment will be granted and the clerk will be directed to enter judgment

in favor of the defendant, Charm-Tex, and against the plaintiff, Williams.

All pending motions for *in limine* relief will be denied as moot.

An appropriate order follows.


Dated: June 18, 2024                     *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         Chief United States Magistrate Judge